UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DUANE ALLEN KALLGREN,                )
                                     ) No. CV-10-5094-JPH
            Plaintiff,               )
                                     ) ORDER GRANTING DEFENDANT'S
v.                                   ) MOTION FOR SUMMARY JUDGMENT
                                     )
MICHAEL J. ASTRUE, Commissioner      )
of Social Security,                  )
                                     )
            Defendant.               )
                                     )
                                     )

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on July 8, 2011 (ECF No. 13, 16). Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Lisa Goldoftas represents the Commissioner of Social Security (Commissioner). The parties have consented to proceed before a magistrate judge (ECF No. 7). On June 27, 2011, plaintiff filed a reply (ECF No. 18). After reviewing the administrative record and the briefs filed by the parties, the court **grants** Defendant's Motion for Summary Judgment (ECF No. 16) and **denies** Plaintiff's Motion for Summary Judgment (ECF No. 13).

**JURISDICTION**

Plaintiff protectively applied for supplemental security income (SSI) and disability insurance benefits (DIB) on March 10, 2008, alleging disability as of November 23, 2007 (Tr. 116-119,

120-126, 142). The applications were denied initially and on reconsideration (Tr. 78-81, 83-86). Plaintiff alleged disability due to a hernia, vision problems, diabetes, and foot problems (Tr. 146).

Administrative Law Judge (ALJ) Robert S. Chester held a hearing on October 7, 2009. Plaintiff, represented by counsel, and a psychological and vocational expert testified (Tr. 37-73). On October 21, 2009, the ALJ[1] issued an unfavorable decision (Tr. 13-27). The Appeals Council denied Mr. Kallgren's request for review on July 2, 2010 (Tr. 1-3). The ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on August 9, 2010 (Ct. Rec. 1, 4).

                        **STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 48 years old at the hearing (Tr. 48). He has a high school education, a two year degree in computers and accounting from a technical school, and has served in the military (Tr. 48-49, 1240). Mr. Kallgren has worked as a delivery driver, fast food worker, store laborer, farm equipment operator, and janitor (Tr. 49-50, 67, 69-70, 154). He was fired from his last job in November 2007 due to memory problems following a stroke

---

[1]The decision is signed by ALJ Moira Ausems "for R.S. Chester" (Tr. 27). For clarity the Court refers to the ALJ as "he" throughout this order.

(Tr. 51), or because medications increased absenteeism (Tr. 146).
Plaintiff testified he has had four strokes. They have affected
the left side of his body, speech, and memory (*Id.*, Tr. 65-66).
Diabetes has caused left eye vision problems, foot neuropathy, and
high blood sugars (Tr. 51-53). Plaintiff suffers pain and sleep
problems but they are eased with proper medication (Tr. 54). Since
undergoing right carotid artery surgery, he suffers balance
problems (Tr. 65).

Plaintiff had problems with "an intestinal hernia" for about
ten years, but since surgery three months before the hearing he
has been feeling much better (Tr. 54-55). He recently underwent
surgery for a broken "right knee or leg." As a result he has
problems driving and climbing stairs (Tr. 55). Plaintiff can stand
or sit for 15 minutes. His doctor limits plaintiff to lifting no
more than ten pounds (Tr. 58-60).

In addition to memory problems, Mr. Kallgren's mental
impairments include depression. He testified he has attempted
suicide more than once, undergone counseling, and began taking
psychotropic medication two weeks before the hearing (Tr. 61-63).
Plaintiff testified he quit drinking five years before the hearing
[i.e., in 2004] (Tr. 56). In June 2009 he reported rarely having a
drink since May 2007 (Tr. 982).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the
as the "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 3 -

twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be

disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir.1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir.1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by

substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir.1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir.1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir.1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir.1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir.1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.

*Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.1987).

### ALJ'S FINDINGS

At step one, the ALJ found plaintiff did not engage in substantial gainful activity after onset on November 23, 2007 (Tr. 15). He found plaintiff was insured through December 31, 2012 (Id.). At steps two and three, he found plaintiff suffers from diabetes mellitus; hernia, status post repair; and knee injury, status post, impairments that are severe but do not meet or medically equal a Listed impairment (Tr. 15, 18). Finding that plaintiff's allegations regarding his limitations were not entirely credible, the ALJ found plaintiff retained the residual functional capacity to perform a range of light work (Tr. 19, 21). At step four, relying on the VE, he found plaintiff can perform his past relevant job as a fast food worker (Tr. 27, 71). The ALJ found plaintiff has not been disabled as defined by the Social Security Act at any time from onset through the date of the decision, October 21, 2009 (*Id.*).

### ISSUES

Plaintiff asserts error in two areas. First, he contends the ALJ should have found his mental impairments are severe. The ALJ allegedly made this error because he failure to properly credit the opinions of examining professionals (Johnson, Pollack, Rubin, and Brown)(ECF No. 14 at 11-15). Second, plaintiff contends the

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 7 -

ALJ should have found his physical impairments prevent work. The ALJ allegedly made this error because he also failed to properly credit the opinions of treating and examining sources (Parnicky, Opara, and Fletcher)(Tr. 15-17).

Plaintiff does not challenge the ALJ's adverse credibility determination on appeal. The Commissioner asserts the ALJ correctly considered plaintiff's diminished credibility, as well as the opinion of the testifying psychologist, when he weighed the opinion evidence plaintiff cites. The Commissioner asserts the decision as a whole is supported by substantial evidence and is free of legal error. He asks the Court to affirm (ECF No. 17 at 4).

## DISCUSSION

### I. Psychological limitations

Plaintiff asserts error at step two. He contends the ALJ should have found he suffers from severe mental limitations (ECF No. 14 at 11-15).

At step two, ALJ Chester found plaintiff suffers from the medically determinable impairments of a mood disorder and polysubstance abuse (DAA), but they are not severe (Tr. 17, Ex. 11F/3, 5F/53-54, Ex. D). He found plaintiff does not suffer from any other medically determinable mental impairment (Tr. 22-24). In reaching these conclusions the ALJ considered the opinion evidence briefly summarized below. He assessed the four broad functional areas known as the "paragraph B" criteria (Tr. 17-18).

#### A. Step two standards

At step two, the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that

significantly limits his ability to do basic work activities. 20
C.F.R. § 404.1520(a)(4)(ii). The claimant must prove the existence
of a physical or mental impairment by providing medical evidence
consisting of signs, symptoms, and laboratory findings; the
claimant's own statement of symptoms alone will not suffice. 20
C.F.R. § 416.908. The effects of all symptoms must be evaluated on
the basis of a medically determinable impairment which can be
shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once
medical evidence of an underlying impairment has been shown,
medical findings are not required to support the alleged severity
of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th
Cir.1991).

The "ability to do basic work activities" is defined as "the
abilities and aptitudes necessary to do most jobs." 20 C.F.R.
§ 404.1521(b). An impairment or combination of impairments may be
found "not severe only if the evidence establishes a slight
abnormality that has no more than a minimal effect on an
individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683,
686-687 (9th Cir.2005)(citations omitted). Step two, then, is "a
de minimus screening device [used] to dispose of groundless
claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996), and
an ALJ may find that a claimant lacks a medically severe
impairment or combination of impairments only when his conclusion
is "clearly established by medical evidence." S.S.R. 85-28. The
question on review is whether the ALJ had substantial evidence to
find that the medical evidence clearly established that the
claimant did not have a medically severe impairment or combination
of impairments. *Webb*, 433 F.3d at 687; *see also Yuckert v. Bowen*,

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 9 -

303, 306 (9th Cir.1988).

**B. Robert L. Johnson, M.D.**

On March 14, 2008, plaintiff told Dr. Johnson, a psychiatrist at the Veterans' Administration Medical Center (VAMC) he had been sober for ten months [i.e., since early 2007]. Dr. Johnson diagnosed substance abuse and dependence (DAA) in remission. He opined plaintiff "does not appear either demented, psychotic or seriously depressed but ... in serious need," as the ALJ observes. Dr. Johnson noted plaintiff chooses a homeless lifestyle due to some religious ideas about Biblical "endtimes" and the inherent lack of safety of permanent dwellings. As a result, plaintiff cannot access many things without an address, including most jobs and DSHS entitlements. He refuses to take prescribed medication for high blood pressure and diabetes. Dr. Johnson opined ongoing talk therapy "may produce some benefit" and did not prescribe psychotropic medication (Tr. 417-418, Tr. 22 at n. 14).

**C. Stephen Rubin, Ph.D.**

About two months later, on May 19, 2008, Dr. Rubin evaluated plaintiff. The ALJ notes

> Dr. Rubin characterized the claimant as 'an unusual man with certain unusual interests' but not appearing to suffer from an Axis II personality disorder. The claimant was opined to have a GAF of 60[2] and [the] propensity to have conflict with others. Dr. Rubin deemed any memory deficit ...'uncertain' but [found] little mental reason why he could not work.

(Tr. 22).

Dr. Rubin, like Dr. Johnson, diagnosed DAA in remission. He noted "some suggestion of a personality disorder but only vague evidence" (Tr. 502-503).

---

[2]indicating moderate symptoms or limitations

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 10 -

**D. William L. Brown, Ph.D.**

It appears plaintiff saw Dr. Brown at the VA only once, about ten months later, on March 23, 2009 (Tr. 1080-1083). Dr. Brown diagnosed anxiety disorder NOS versus schizotypal personality disorder (Tr. 183).

**E. Dennis R. Pollack, Ph.D.**

About six months later, in September 2009 [a month before the hearing], Dr. Pollack evaluated plaintiff at the request of Mr. Kallgren's counsel. The ALJ observes plaintiff told Dr. Pollack he "had an exemplary educational grade point level in high school and college." He can drive for 100 miles without needing to stop. Dr. Pollack's MMPI-2 results show plaintiff may have exaggerated his difficulties. Pollack diagnosed somatoform disorder NOS, alcohol dependence in remission, and personality disorder NOS. He opined plaintiff's GAF was 60. He assessed plaintiff is markedly limited in two areas, the ability to (1) perform within a schedule, maintain regular attendance, and be punctual, and (2) complete a normal workday/workweek without interruptions from psychologically based symptoms or without unreasonable numbers and lengths of rest periods. He opined plaintiff is moderately limited in the ability to maintain attention and concentration for extended periods, and to accept instructions and respond appropriately to criticism from supervisors (Tr. 22-23, 1239-1248).

**F. Jay M. Toews, Ed.D.**

Dr. Toews reviewed the record and testified on October 7, 2009. He opined plaintiff shows no signs of cognitive decline or memory problems, and testing indicates he has an above average IQ. Dr. Toews, along with other treating and examining professionals,

noted plaintiff's "bohemian or eccentric" lifestyle, also described as a chosen individualistic homeless lifestyle. The ALJ states

> Dr. Toews added the claimant appears to embellish his situation and does whatever he wants to do. For example, the evidence showed the claimant has showed up for appointments and treatment but would leave before being seen (see Ex. 22F/7, 22F/14). Dr. Toews also noted when the claimant received treatment options he would just walk out and would only show up for housing when in 'dire straits.' However, when he felt better or conditions were 'too stringent' he would 'take off.' Dr. Toews ... characterized the claimant as knowing what to say in order to obtain services.
>
> ... Dr. Toews opined the other opinions related to a mood disorder or schizo-type disorders are "fishing" attempts to find a rationale for his symptoms based on his lifestyle and should not be considered wholly valid. Dr. Toews stated the VA psychiatrist would evaluate the claimant when homeless and living out of his van and only working temporary or seasonal work. The claimant would then quit when he had enough money or had his 'fill.' ... Dr. Toews further opined, apart from the claimant's physical problems, the claimant has generally adapted well and would only appear to [see] medical providers in 'dire circumstances;' basically, when he wanted something.

(Tr. 23-24, 41-47).

Dr. Toews opined plaintiff does not suffer from a personality disorder (schizotypal or otherwise), nor from a somatoform or mood disorder. He opined plaintiff suffers from DAA in remission (Tr. 41-45). The ALJ observes plaintiff worked consistently "up until 2007 even when using drugs and alcohol" (Tr. 17, Ex. 3D).

**G. Credibility**

To aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found him less than fully credible (Tr. 21). Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective

complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir.2005). As noted, plaintiff does not challenge the ALJ's credibility assessment on appeal.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993).

Although there is arguably evidence of malingering[3], the ALJ gave clear and convincing reasons for his adverse credibility determination. ALJ Chester relied, in part, on noncompliance with treatment, inconsistent statements, and activities inconsistent with claimed severe limitations (Tr. 20-23).

*Unexplained failure to comply with treatment*  The ALJ notes plaintiff "blames others in lieu of taking responsibility for his

---

[3]The ALJ notes MMPI-2 results show plaintiff may have been exaggerating his difficulties (Tr. 23). Dr. Toews testified the same MMPI-2 results did not reveal malingering (Tr. 47).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                           - 13 -

own well-being and is generally non-compliant or intransigent."
The ALJ points out

> The record is replete with the claimant's uncontrolled
> high blood pressure. However, with compliance and
> medications the claimant's condition improves.(See Ex.
> 1F/2, 1F/8) ...
>
> Claimant 'fired' his last primary care physician
> 'because he wasn't managing my diabetes the way it should
> be.' Yet, when asked to come in for a serious high blood
> pressure appointment that could result in blindness [or]
> death [if not tested or treated], the claimant refused.
> (Ex 1F/17-19)

(Tr. 17 at n. 1; Tr. 20 at n. 9; see e.g., Tr. 222, 226).
Similarly, three months after onset, without explanation,
plaintiff refused to change his medication for blood pressure and
diabetes even when told neither condition was meeting treatment
goals (Tr. 428). He refused neurological follow up after allegedly
having a stroke (Tr. 899), and in April 2009, continued putting
weight on his right knee after surgery contrary to medical advice
(Tr. 907, 939) .

_Inconsistent statements_  Plaintiff has inconsistently
described his military discharge. He testified he was discharged
for a personality disorder (Tr. 49; see also Tr. 420). Mr.
Kallgren has also said he was discharged because he got "into a
fight" (Tr. 21; 766, 1240).

_Activities_  Between 2008 and 2009 plaintiff fished, hunted
for gem stones, planted a garden, studied geology, attended church
weekly, watched sports, hiked, walked, watched movies, read, and
listened to music (Tr. 22, 789). Plaintiff's activities are
consistent with the ability to perform work-like tasks and
inconsistent with disabling limitations.

The ALJ's reasons for finding plaintiff less than fully

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                          - 14 -

credible are clear, convincing, and fully supported by the record.

An ALJ may base an adverse credibility determination on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.2008)(citations omitted).

A claimant's inconsistent statements support an adverse credibility determination. *See Thomas v. Barnhart,* 278 F.3d 947, 958-959 (9th Cir.2002); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir.1986).

It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).

Although the evidence may support more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner where, as here, proper legal standards were applied in weighing the evidence and making the decision. *See Brawner*, 839 F.2d at 433; *Sprague*, 812 F.2d at 1229-1230.

Plaintiff contends the ALJ improperly relied on the reason for the evaluation (it was at Kallgren's attorney's request) when he rejected Dr. Pollack's contradicted opinion (Tr. 23-24). Plaintiff may be correct if this was the ALJ's sole reason, but it was not. An ALJ may reject an opinion because it was done at the request of an attorney and was not based on objective medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996). When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.2005).

Dr. Toews testified Dr. Pollack's assessed marked and moderate limitations are not supported by Pollack's own test results. They show intact memory and cognitive functioning, and an above average IQ. The ALJ's reasons for rejecting Dr. Pollack's contradicted opinion (Dr. Toews' testimony, plaintiff's non-treatment motivation for the evaluation, and the lack of clinical support by the same evaluator for assessed dire limitations) are specific, legitimate and supported by substantial evidence.

VA assessed GAFs

The ALJ rejected the VA providers' opinions that plaintiff's GAF scores indicated serious symptoms or limitations. The ALJ states:

> When asked about the low GAF scores from the Veteran's Administration evidence records, Dr. Toews opined these GAF scores are based on [the] sympathy of narrowly defined standards by social workers in institutions. Based on this opinion the undersigned considers those low GAF scores irrelevant to the current determination and unreliable [because] from non acceptable medical sources.

(Tr. 24, referring to Tr. 41, 46). In addition, records show in November 2008, plaintiff admitted he quit taking prescribed antidepressants, despite the fact that three months earlier his mood had improved on medication (Tr. 638, 688).

The ALJ's reasons for rejecting the contradicted GAF opinions are proper and supported by the record.

An ALJ may reject a treating or examining physician's contradicted opinion in reliance on the testimony of a nonexamining advisor when the testimony is supported by other evidence in the record and is consistent with it. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995); *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir.1984). Dr. Toews' opinion is supported by

other evidence and consistent with it, including plaintiff's lack of treatment, lack of compliance with treatment, the effectiveness of medication at controlling symptoms, and activities in excess of what would be expected from someone with plaintiff's allegedly disabling limitations.

An ALJ need not accept the opinion of a non-acceptable source. 20 C.F.R. § 404.1513(a). An ALJ may consider such opinions pursuant to 20 C.F.R. § 404.1513(d), but is free to reject the testimony of an "other source[]" by furnishing reasons germane to that particular witness. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993). And it is well established that an ALJ may properly discount a diagnosis based on a claimant's unreliable self-report. *Andrews v. Shahala*, 53 F.3d 1035, 1043 (9th Cir.1995).

It is the role of the trier of fact to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ acted in accordance with his responsibility to determine the credibility of the medical evidence, and he gave specific, legitimate reasons for discrediting particular opinions. *See Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992); *Magallanes v. Bowen*, 881 F.2d 747, 751-752 (9th Cir.1989).

The ALJ properly weighed the medical evidence of psychological limitations and plaintiff's credibility. He came to a reasonable conclusion based on the evidence in the record, and that ends the court's inquiry on appeal. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir.2005)("If the record would support more than one rational interpretation, we defer to the ALJ's decision.").

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 17 -

**II. Physical limitations**

Next plaintiff alleges the ALJ erred when he assessed an RFC for a range of light work (Ct. Rec. 14 at 15-17). He contends that if the ALJ properly credited certain medical opinions, he would have found Mr. Kallgren is disabled.

The Commissioner responds that the ALJ's RFC assessment is supported by the record, and his determination is free of error (Ct. Rec. 17 at 16-19).

The ALJ found plaintiff's diabetes, hernia (status post repair) and knee injury (status post) are severe impairments (Tr. 15).

**Michael Parnicky, M.D. - December 18, 2007**

Plaintiff contends the ALJ should have credited treating doctor Parnicky's opinion that Mr. Kallgren's limitations significantly interfered with his ability to work. Dr. Parnicky opined plaintiff suffers limitations due to visual deficits, an umbilical hernia, and hypertension. He opined plaintiff is limited to light work[4] (Tr. 281).

**James Opara, M.D. - June 28, 2008**

Seven months after onset, Dr. Opara reviewed limited records and evaluated plaintiff. Plaintiff reports no foot pain at this time. Exam results showed normal functioning. Dr. Opara diagnosed hypertension, type 2 diabetes, an umbilical hernia, obesity, and

---

[4]The ALJ states Dr. Parnicky did not give an opinion on claimant's "overall work level" (Tr. 25). The ALJ is incorrect. Likely the ALJ failed to notice Dr. Parnicky wrote an RFC for light work in narrative form under "affected work activities," rather than in the form's usual place. *See Tr. 281.* The error is harmless since the ALJ found plaintiff has the RFC to perform a range of light work.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 18 -

right carotid artery stenosis, status post right carotid endarterectomy [on May 5, 2008](Tr. 521-522). He opined plaintiff could perform medium work (Tr. 519-522, 533). In July 2008, plaintiff indicated he was working as a pizza delivery driver (Tr. 656, 667).

**Dr. Parnicky - July 21, 2008**

In February 2008, Dr. Parnicky reviewed plaintiff's brain scan. He opined the findings were compatible with chronic infarction, probable mild, chronic microvascular ischemic gliosis involving the cerebral white matter, and right mastoid disease (Tr. 444-445). He examined plaintiff about a month after Dr. Opara, in July 2008, and again opined plaintiff was capable of light work (Tr. 607-610). In September 2008 Dr. Parnicky opined plaintiff was doing well on the current medication regimen (Tr. 697).

**Thomas Fletcher, M.D. - January 15, 2009 and July 2, 2009**

About six months later, in January 2009, Dr. Fletcher saw plaintiff at the VAMC for the first time (Tr. 1249-1252). After evaluation he noted plaintiff "will be scheduled for umbilical hernia repair" (Tr. 1250). He opined plaintiff was unable to lift or carry but could perform sedentary work (Tr. 1251).

Records in April 2009 show plaintiff canceled scheduled hernia repair surgery in Seattle multiple times (Tr. 961)

Plaintiff underwent surgery to repair a tibial fracture in his right knee after he fell from a chair in February 2009. He underwent hernia repair in June 2009 (Tr. 728, 731, 981, 1254).

In July 2009, Dr. Fletcher re-evaluated plaintiff and opined he needed about a month to recover from hernia surgery, until

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 19 -

August 2009 (Tr. 1253-1256). He opined plaintiff's hernia significantly interfered with his ability to lift, handle, and carry, and some visual field loss from a prior CVA [stroke] also significantly limits his ability to see (Tr. 1255). Dr. Fletcher opined plaintiff could perform sedentary work (Id.).

The Commissioner correctly observes the ALJ rejected this opinion because Dr. Fletcher gave "little explanation of the evidence he relied upon to reach his opinion" (ECF No. 17 at 19, Tr. 26). More importantly, the ALJ notes Dr. Fletcher's assessed limitations are more extreme than those even plaintiff described at the hearing (Tr. 26). An ALJ need not accept the opinions of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings, *Bayliss v. BArnhart*, 427 F.3d 1211, 1216 (9th Cir.2005), nor is he required to credit opinions contradicted by a claimant's testimony.

The ALJ found plaintiff's foot pain is not severe. Although Mr. Kallgren complained of right foot pain, exams showed no deformity and he was able to ambulate without difficulty. He admitted he could walk a half mile. Tests in 2007 and May 2008 showed mild degenerative changes. In June 2008 he told Dr. Opara he was not currently having foot pain (Tr. 25, Ex. 13F, Tr. 298, 678).

The ALJ found plaintiff's hernia surgery was delayed by noncompliance with controlling his diabetes and, even when medically cleared for surgery, Mr. Kallgren refused to make an appointment (Tr. 16, Ex. 4F, 5F/1, 13F, 23F, 26F, Tr. 300). Plaintiff testified surgery resolved the problem (Tr. 16).

As noted, plaintiff underwent a carotid endarterectomy about

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                           - 20 -

six months after onset, in May 2008. Imaging in June 2008 showed the cardiomediastinal silhouette stable and within normal limits (Tr. 16, Ex. 22F/28).

The ALJ notes plaintiff's reported strokes are largely unverified[5] and, as with vision and blood pressure problems, related to noncompliance with medication (Tr. 16-17, 320-321, 326, 334). The ALJ is correct. Plaintiff's vision problems are noted to be "secondary to malignant hypertension and uncontrolled diabetes" (Tr. 431). Examining optometry professionals at the VA noted plaintiff's vision "cleared up a lot" after he underwent the carotid endarterectomy on May 5, 2008 – six months after onset (Tr. 673, 712). In July 2008 plaintiff indicated he was considering trying to find work in the accounting field, indicating he did not believe his vision problems were disabling (Tr. 656).

Diabetes is noted to be uncontrolled in November 2007 (onset) because plaintiff did not take prescribed medication for five months (Tr. 212, 221, 290-210). He told Dr. Johnson in March 2008 he refuses to take medication prescribed for blood pressure and diabetes. The ALJ found plaintiff's obesity does not change the

_____

[5] Plaintiff reported he had a stroke on July 4, 2007, but did not seek medical treatment (Tr. 267). VA records show a history of "self reported strokes" (Tr. 223). A brain scan in December 2007 was negative (Tr. 299). The ALJ notes, however, plaintiff is described as having had "an acute infarct of the middle cerebral artery perforating vessels on the right involving the corona radiate an old left insular and frontal opercular infarct on the left" (Tr. 15; Ex. 20F, Ex. 22F/15). The ALJ found reason to believe the "lacunar infarct" is related to uncontrolled hypertension or diabetes (Tr. 16). A social worker notes plaintiff does not grasp the difference between a seizure and a stroke (Tr. 660).

assessed RFC for a range of light work. The ALJ's finding is supported by, among other factors, plaintiff's many reported activities.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405 (g).

The ALJ properly weighed the evidence of physical limitation, and came to a reasonable conclusion based on the evidence. That ends this court's inquiry on appeal. *Bayliss*, 427 F.3d at 1214 n. 1.

**III. Step four**

Plaintiff asserts the RFC and questions to the vocational expert are erroneous. He premises the step four argument on the same issues the court has already addressed *i.e.*, the weight the ALJ gave the medical and other evidence. Step four error is not established simply by restating arguments that the ALJ improperly weighed the evidence. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-1176 (9th Cir.2008).

After review the Court finds no harmful error in the ALJ's decision.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 22 -

court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(ECF No. 16)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 2nd day of August, 2011.


<u>s/ James P. Hutton</u>
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE